UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

LOUIS F. PARSONS,                        CIVIL ACTION
            Appellant                    NO. CV07-0486

VERSUS

MICHAEL J. ASTRUE, COMMISSIONER          JUDGE JAMES T. TRIMBLE
OF SOCIAL SECURITY,                      MAGISTRATE JUDGE JAMES D. KIRK
            Appellee


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Louis Franklin Parsons ("Parsons") filed an application for
supplemental security income ("SSI") benefits on June 8, 2004,
alleging a disability onset date of February 18, 2004 (Tr. p. 52),
due to "uncontrolled high blood pressure plus injury/disability to
left leg and foot" (Tr. p. 25). That application was denied by the
Social Security Administration ("SSA") (Tr. p. 24).

A de novo hearing was held before the administrative law judge
("ALJ") on March 28, 2006 (Tr. p. 200), at which Parsons appeared
with his attorney and a vocational expert ("VE"). The ALJ found
that, although Parsons suffers from "severe"[1] hypertension and
swelling of the left foot, he has the residual functional capacity
to perform a wide range of light work and can perform work that
exists in significant numbers in the national economy such as

_____

    [1] An impairment can be considered as not "severe" only if it
is a slight abnormality which has such a minimal effect on the
claimant that it would not be expected to interfere with the
individual's ability to work, irrespective of age, education or
work experience. Estran v. Heckler, 745 F. 2d 340, 341 (5th Cir.
1984). See also, 20 C.F.R. § 404.1521, 20 C.F.R. § 416.921;
Anthony v. Sullivan, 954 F.2d 289 (5th Cir. 1992).

cubicle cashiering, storage facility rental clerk, or office helper and, therefore, was not under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision on June 26, 2006 (Tr. pp. 12-18).

Parsons requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 4) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Parsons next filed this appeal for review of the Commissioner's final decision. Parsons raises the following issues for judicial review:

> 1. The Appeals Council failed to follow its own policy and procedures with regard to the receipt of additional evidence.

> 2. Alternatively, the ALJ erred in failing to give proper consideration to al of Parsons' medically determined impairments, resulting in findings at Steps 4 and 5 that were unsupported by the totality of the evidence.

The Commissioner filed a brief in response to Parsons' appeal, to which Parsons filed a reply. Parsons' appeal is now before the court for consideration.

<u>Eligibility for SSI Benefits</u>

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff

must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983).

The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

Summary of Pertinent Facts

Parsons was 50 years old at the time of his administrative hearing (Tr. p. 208), has an eight grade education (Tr. p. 208), and has past relevant work experience as a cable roller, a carpenter's helper, a painter's helper, a cashier and maintenance person at two Exxon stations, and a sheet metal helper (Tr. p. 59-66).

On February 18, 2004, Parsons complained of increasing redness in his left foot and ankle which was exacerbated by walking and relieved by elevation (Tr. pp. 104-107). On February 25, 2004, Parsons returned to the medical clinic because his left foot was discolored and swelling; cellulitis, uncontrolled hypertension, tobacco dependence, and ankle edema were diagnosed (Tr. p. 127). No venous thrombi were present in the deep veins of either lower extremity (Tr. pp. 137, 139) and there was no significant arterial

disease (Tr. p. 138).

In April 2004, Parsons was evaluated for complaints of left foot and ankle pain at LSU-Medical Center (Tr. pp. 91-93). X-rays showed soft tissue swelling in the left aspect of the foot, with no fractures, dislocations, or foreign bodies (Tr. 9. 92). Mild soft tissue swelling about the lateral margin of the foot was diagnosed (Tr. p. 92).

In June 2004, Parsons was examined by Dr. James McNally, a family practice doctor, concerning Parsons' complaint of left foot pain and claim that his left lower leg had turned black for about two months; Parsons stated he had been placed on antibiotics and blood pressure medicine, and the darkened area of his leg slowly resolved (Tr. pp. 96-97). Dr. McNally noted that Parsons' left leg was normal in appearance at that time, with no edema and good pulses in his foot (Tr. p. 96). Dr. McNally also found Parsons had anginal chest pain after about three blocks of walking, a chronic daily cough from smoking (three packs a day for many years), and was drinking alcohol heavily (Tr. p. 96). Dr. McNally noted Parsons had very poor air movement on his lung exam which was consistent with COPD (Tr. p. 96). Dr. McNally also found Parsons had very elevated blood pressure (180/100) and added Norvasc for blood pressure control (Tr. p. 96). Dr. McNally diagnosed peripheral vascular disease and angina, and recommended a vascular ultrasound and a work-up on Parsons' heart (Tr. p. 96).

On June 24, 2004, Dr. Daniel J. Trahant, a neurologist, performed nerve conduction studies on Parsons and found moderate

left carpal tunnel syndrome in his left arm and mild peripheral polyneuropathy of a mixed motor and sensory type[2] (Tr. pp. 100-101).

In July 2004, Parsons was diagnosed with uncontrolled hypertension and cellulitis[3] in his left leg, was prescribed Cardizem LA and Benicar HCT, and was referred to a neurologist for numbness and tingling in his left foot (Tr. p. 99). Nina Ravey, a Certified Family Nurse Practitioner employed at the Shirley Clinic in Jennings, Louisiana, stated that Parsons' condition had been resistant to treatment, remained unresolved, and he was unable to work (Tr. pp. 115, 117).

In September 2004, Parsons was examined by Dr. Deidra Parrish,[4] an internist, who found left foot and ankle pain, which a history of left lower extremity cellulitis which was treated (Tr. p. 148). Dr. Parrish stated that Parsons did not have any motor or

---

[2] Polyneuropathy means disease of the nerves. Sensorimotor polyneuropathy is a body-wide process that damages nerve cells, nerve fibers, and nerve coverings, causing nerve signals to slow down, and causing decrease in movement or ability to feel (sensation). MEDLINEplus Health Information, Medical Encylopedia: Sensorimotor polyneuropathy, *available at* http://www.nlm.nih.gov/medlineplus/ency/article/000750.htm (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[3] Cellulitis is an acute inflammation of the connective tissue of the skin, caused by infection with staphylococcus, streptococcus or other bacteria. MEDLINEplus Health Information, Medical Encyclopedia: Cellulitis*, available at* http://www.nlm.nih.gov/medlineplus/ency/article/000855.htm (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[4] The administrative record does not indicate what kind of medicine Dr. Parrish practices or specializes in.

6

neurologic deficits, had adequate pedal pulses, and had past chest pain that was not consistent with angina pectoris; his chest x-ray was normal (Tr. pp. 145-148).

In February 2006, Dr. Mark E. Clawson, a family practice doctor in Jennings, Louisiana, noted the discolorations in Parsons' left ankle, stated that it sounded like Parsons has neuropathic pain, and prescribed Lortab and Neurontin; an ultrasound of the arteries in Parsons' ankles which was normal, showing no significant lesion (Tr. pp. 171, 173). A rheumatoid profile was also negative (Tr. pp. 172-173).

In March 2006, Parsons underwent electrodiagnostic studies with Dr. Reynard Odenheimer, a neurologist (Tr. pp. 168-169), which produced abnormal results in both lower extremities suggestive of diffuse sensorimotor axonal polyneuropathy and possible bilateral L4, L5, and S1 radiculopathies (Tr. pp. 168-169).

In September 2006, Nina Ravey, a Certified Family Nurse Practitioner employed at the Shirley Clinic in Jennings, Louisiana, who has been involved in Parsons' treatment since 2004 (Tr. pp. 115-127), stated in a "Multiple Impairments Questionnaire" that Parsons has bilateral peripheral neuropathy with continual pain in the left lower leg and foot, cellulitis in the left lower leg, and uncontrolled blood pressure, and has a fair prognosis (Tr. pp. 188-190). Ravey stated that the precipitating factors for Parsons' pain are swelling, edema, erythema, and a black and indurated[5] left

_____

[5] Indurated is defined as "having become firm or hard especially by increase of fibrous elements." MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Indurated,

lower leg and foot (Tr. p. 190). Ravey stated that Parsons can sit for 0-1 hours in an eight hor day, stand/walk 0-1 hours in an eight hour day, and cannot sit or stand/walk continuously at work (Tr. p. 191); he needs to take rest breaks every thirty minutes (Tr. p. 195). Ravey also stated that Parsons has a moderate degree of limitations (significantly limited but not completely precluded) in using his upper extremities to do repetitive reaching, handling, fingering, or lifting because he is so fatigued, weak, and has no strength in his left lower leg, causing him to have difficulty with reaching, handling, fingering or lifting (Tr. pp. 192-193). Ravey stated that Parsons' symptoms would likely increase if he was placed in a competitive work environment, his condition interferes with his ability to keep his neck in a constant position, his pain, fatigue and other symptoms are constantly severe enough to interfere with his attention and concentration, and his impairments will be ongoing for at least twelve months (Tr. p. 124). Ravey stated that Parsons is not a malingerer, he is incapable of even "low stress" work because any amount of stress intensifies his pain, and he would be likely to miss work at least three times a month due to his impairments (Tr. pp. 195-196). Ravey said Parsons needs to avoid fumes, gases, temperature extremes, humidity, and heights, and should not do any pushing, pulling, kneeling, or bending (Tr. p. 196).

At his 2006 administrative hearing, Parsons testified that he

_available at_ http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

was fifty years old, 5'11" tall, weighed 145 pounds (he had lost about twenty pounds), and had three minor children, one of whom lived with him in Jennings, Louisiana (Tr. p. 209). Parsons testified that he does not drive because he gets dizzy, and that his driver's license is expired (Tr. pp. 208-209). Parsons testified that he has an eighth grade education, can read, write, do some math, and understands money (Tr. pp. 209-210).

Parsons testified that he worked in oil exploration (seismographic work) from ages seventeen through thirty-eight, then worked as a maintenance supervisor for Exxon for the next eight years, then worked for an air conditioning company for four years, until February 2004 (Tr. pp. 211-212). Parsons further testified that, whenever the oil field work was down, he worked for his brother, a carpenter, doing painting and roofing (Tr. p. 211). Parsons testified that his brother paid him cash, as did the air conditioning company (Tr. pp. 211-212). Parsons testified that he has attempted to work for his brother three times since February 2004, but he had an incident of falling down each time (Tr. p. 212).

Parsons testified that he cannot work full time because, when he exerts himself at all, such as by walking ten minutes, his blood pressure goes up, he gets dizzy, and he falls (Tr. p. 213). Parsons testified that he takes his blood pressure medicine, but it does not control his blood pressure (Tr. p. 213), and he takes a Neurontin for the nerve problems in his left leg (Tr. p. 218). Parsons denied having any medication side effects (Tr. pp. 218,

225).

Parsons further testified that no one knows what is wrong with his left leg; he does not have diabetes and two ultrasounds have been normal (Tr. p. 213). Parsons testified that he takes two blood pressure medications and pain medication (Lortab), and none of them work (Tr. p. 214). Parsons testified that one doctor initially thought his left foot may need to be amputated, while another believed he would eventually need surgery, and yet another checked him for and ruled out bone cancer (Tr. pp. 214-215); Parsons testified that his left leg up to his shin, his ankle, and his left foot are painful, though not necessarily all at the same time, so he sits on his porch all day, and uses a cane occasionally; walking makes the pain worse (Tr. pp. 215-216). The pain in his ankle wakes him up at night sometimes (Tr. p. 221).

Parsons testified that he gets up at 6:15 a.m. and has coffee while a friend takes his daughter to school (Tr. p. 216). Parsons usually spends the day sitting on his porch listening to the radio and talking with visitors (Tr. p. 222). Parsons does not visit anybody and does not go to meetings or church (Tr. p. 222). Parsons rides his bicycle most days for ten to twenty minutes because it helps his blood pressure, but he has fallen off of hie bicycle twice (Tr. p. 217). Parsons testified that he can walk about two blocks and stand for perhaps ten minutes (Tr. p. 218). Parsons testified that he may fall if he tries to bend over and pick something up from the floor, he cannot squat down, he can pick a coin up from a table and can hold a cup or a glass, he can lift

a gallon of milk, there is nothing wrong with his back insofar as lifting things, and he has no problem with sitting although his ankle still hurts when he sits (Tr. pp. 218-219). Parsons also testified that, after he stands up for ten minutes, he has to sit for four to five hours (Tr. p. 234). Parsons testified that he smokes about half a pack of cigarettes a day,[6] drinks very little alcohol, receives food stamps, has a card for medical care, lives in a house owned by himself, his brother, and his sister, and his family pays for the utilities (Tr. pp. 219-221). Parsons takes care of his own personal hygiene, his daughter cooks, does the laundry and housework, and grocery shops, and his friends do his yard work (Tr. p. 221).

The VE testified that Parsons' past relevant work as an air conditioning helper was semi-skilled, heavy work, his past work doing gas station maintenance and cashiering was semi-skilled, medium work, and his past work in oil exploration was medium, semi-skilled work (Tr. pp. 227-229). The VE testified that Parsons did not have any transferrable work skills except cashiering (Tr. p. 229).

In response to a hypothetical question from the ALJ, involving a person of Parsons' age, education, and work experience, who can lift/carry ten pounds frequently and twenty pounds occasionally,

---

[6] Parsons explained that, although he told Ravey in 2004 that he went through two packs of cigarettes and two six-packs of beer a day, he had a habit of putting his cigarettes down so that they burned out without him actually smoking all of it, and he shared the beer with visitors, so he did not actually smoke and drink as much as stated (Tr. p. 223).

cannot climb ropes, ladders, or scaffolds, can occasionally climb ramps and stairs, cannot work at unprotected heights or around dangerous moving machinery, and can only perform minimal stress work at non-assembly line pace, the VE testified that such a person could not perform any of his past relevant work (Tr. pp. 229-230). The VE further testified that such a person could perform such jobs as vending machine collections and restocking (unskilled, light work, 800 jobs regionally and 80,000 jobs nationally), cubicle cashiering (light or sedentary work, 5000 jobs regionally and 500,000 jobs nationally), or storage facility rental clerk (unskilled light work, 700 jobs regionally and 100,000 jobs nationally) (Tr. p. 230).

The ALJ posed a second hypothetical question to the VE, involving a person of Parsons' age, education, and work experience, who can lift/carry ten pounds frequently and twenty pounds occasionally, cannot climb ropes, ladders or scaffolds, can occasionally climb ramps and stairs, cannot work at unprotected heights or around dangerous moving machinery, can only perform minimal stress work at a non-assembly line pace, and must have a sit/stand option which allows him to change position at will (Tr. p. 231). The VE testified that such a person could work as a cubicle cashier, a storage facility rental clerk, or an office helper (light, unskilled, 2500 jobs regionally and 250,000 jobs nationally) (Tr. p. 231).

In response to a third hypothetical question by the ALJ, involving a person of Parsons' age, education, and work experience,

who can lift/carry ten pounds frequently and twenty pounds occasionally, cannot climb ropes, ladders or scaffolds, can occasionally climb ramps and stairs, cannot work at unprotected heights or around dangerous moving machinery, can only perform minimal stress work at a non-assembly line pace, can stand for up to ten minutes at a time, and has no limitation for sitting (Tr. pp. 231-232), the VE testified the person could perform the same jobs as set forth in his response to the second hypothetical (Tr. p. 232).

In response to a fourth hypothetical question by the ALJ, involving a person with all the limitations as testified to by Parsons at the administrative hearing, the VE testified the person could not perform any of his past relevant work and could not perform any other work, primarily due to his pain and inability to work and complete tasks for an extended period of time (Tr. p. 232).

Parsons' attorney posed a hypothetical question involving a person of Parsons' age, education, and work experience, who can lift/carry ten pounds frequently and twenty pounds occasionally, cannot climb ropes, ladders, or scaffolds, can occasionally climb ramps and stairs, cannot work at unprotected heights or around dangerous moving machinery, can only perform minimal stress work at non-assembly line pace, can stand for up to ten minutes at a time but can do so no more than five or six times in a work day and for no more than a total of 45 minutes in a work day, and has no limitation for sitting (Tr. p. 233). The VE testified that such a

person could work as a cubicle cashier because he would have a stool to sit on (Tr. p. 233).

Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v.

<u>Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v.</u> <u>Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Parsons (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing <u>Lovelace v. Bowen</u>, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial

burden of showing that he is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Parsons has not engaged in substantial gainful activity since February 18, 2004, and that he has severe impairments of hypertension and swelling of the left foot, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 14).  The ALJ also found that Parsons is unable to perform his past relevant work (Tr. p. 17).

The ALJ found that Parsons has the residual functional capacity to lift/carry ten pounds frequently and twenty pounds occasionally, cannot climb ropes, ladders or scaffolds, can occasionally climb ramps and stairs, cannot work at unprotected heights or around dangerous moving machinery, can only perform minimal stress work at a non-assembly line pace, and must have a sit/stand option which allows him to change position at will.  The ALJ concluded that Parsons can perform work that exists in significant numbers in the national economy such as cubicle cashiering, storage facility rental clerk, or office helper and, therefore, was not under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision on June 26, 2006 (Tr. pp. 12-18).

<u>Issue 1 - Appeals Council</u>

Parsons contends the Appeals Council failed to follow its own policy and procedures with regard to the receipt of additional evidence. Specifically, Parsons claims the Appeals Council failed to consider the residual functional capacity assessment by Nina Ravey which Parsons submitted in September 2006, finding it did not provide a basis for changing the ALJ's decision. The ALJ relied on the September 2004 assessment by Dr. Parrish (Tr. pp. 145-148).

Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's decision complained of is based. The court's role is to consider the administrative record as a whole, which includes the additional evidence submitted to the Appeals Council, in deciding if the Commissioner's decision is supported by substantial evidence. <u>Higginbotham v. Barnhart</u>, 405 F.3d 332, 337-338 (5ᵗʰ Cir. 2005). The new evidence is to be considered along with all other evidence in the record to determine if it dilutes the record to the point that the ALJ's determination is insufficiently supported. <u>Higginbotham v. Barnhart</u>, 163 Fed.Appx. 279, 281-282 (5ᵗʰ Cir. 2006) (*Higginbotham II*).

Nina Ravey is a nurse practitioner. The Commissioner argues that a nurse practitioner is a medical source, but is not an "acceptable" medical source, citing 20 C.F.R. § 404.1513; Social Security Ruling (S.S.R.) 06-03p, and therefore the Appeals Council was correct in finding her residual functional capacity assessment would not provide a basis for changing the ALJ's decisions.

Only acceptable medical sources can establish the existence of a medically determinable impairment, offer a medical opinion, or be a qualified treating source whose medical opinion may be entitled to controlling weight. Information from other sources, however, may provide insight into the severity of an impairment and how it affects the individual's ability to function. 20 C.F.R. § 404.1513(d); S.S.R. 06-03p. Also, Okolie v. Astrue, 2008 WL 1947103 (N.D. Tex. 2008), citing SSR 06-03p; Mocherman v. Astrue, 2008 WL 1958297 (W.D.La. 2008).

The Appeals Council found Ravey's assessment would not change the ALJ's decision because Ravey is not an acceptable medical source. However, Ravey's residual functional capacity assessment shows how Parsons' impairment affects his ability to function, an assessment the Commissioner accepts from a nurse-practitioner. Therefore, the Appeals Council erred in rejecting Ravey's residual functional capacity assessment, since it supports Parsons' testimony, is contradictory to the ALJ's findings and conclusions, and is supported, at least in part, by the diagnoses of Dr. Trahant and Dr. Odenheimer, the two neurologists who examined Parsons and found that Parsons has sensorimotor neuropathy.

The ALJ apparently concluded that the March 2006 finding by Dr. Odenheimer, a neurologist, that the EMG study suggesting Parsons has diffuse sensorimotor axonal polyneuropathy is unsupported and counter to the September 2004 one-time consultative exam by Dr. Parrish, an internist. Dr. Parrish did not find any motor or neurologic deficits. However, the June 24, 2004, nerve

conduction studies by Dr. Daniel J. Trahant, another neurologist, found mild peripheral polyneuropathy of a mixed motor and sensory type (Tr. p. 101),[7] and supports Dr. Odenheimer's conclusions and Nina Ravey's residual functional capacity assessment. Since Dr. Parrish is not a neurologist and did not perform an EMG (electromyography) or nerve conduction studies, her opinion as to whether Parsons has sensorimotor polyneuropathy should not have been accepted over that of the two neurologists who examined Parsons.

Therefore, the ALJ's conclusion that Parsons suffers from "swelling of the left foot," rather than from sensorimotor polyneuropathy, is not supported by substantial evidence. In light of the ALJ's error as to the nature of Parsons' impairment, the Appeals Council erred in failing to consider Ravey's residual functional capacity assessment of Parsons as evidence of how Parsons' impairments affect his ability to function.

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. However, this does not entitle Parsons to a decision in his favor based upon the existing record. The record is simply inconclusive as to whether there are any jobs existing in sufficient numbers in the national economy which Parsons can perform, given his true impairments. Therefore, Parsons' case should be remanded to the Commissioner for further proceedings.

---

[7] It is noted that the ALJ did not mention the medical records from Dr. Trahant in his opinion.

<u>Issue 2 - Work</u>

Parsons also contends the ALJ erred in failing to give proper consideration to al of Parsons' medically determinable impairments, resulting in findings at Steps 4 and 5 that were unsupported by the totality of the evidence.  Parsons contends that, according to the Dictionary of Occupational Titles, the job of cashiering involves more than minimal stress, the job of storage facility rental clerk involves more than minimal stress, and requires occasional stooping, kneeling, and exposure to weather, which he is not supposed to do, and an office helper is not able to sit/stand at will, which Parsons requires, and involves more than minimal stress.

Since, as discussed above, the ALJ did not consider Parsons' sensorimotor polyneuropathy and its impact on his residual functional capacity, and did not have Ravey's residual functional capacity assessment of Parsons' before him at the time he made his findings as to Parsons' ability to work, this case should be remanded to the Commissioner for a determination as to whether there are any jobs existing in sufficient numbers in the national economy which Parsons can perform, given his true impairments.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Parsons' case be REMANDED to the Commissioner for further proceedings in accordance with the views expressed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and

Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 25th day of July, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE